UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION
EASTERN DISTRICT OF NEW YORK  ONLY
---------------------------------------------------------------- X
JOSE SERRANO, LUIS BENIQUEZ,  :
 :
                      Plaintiffs,  :  MEMORANDUM
 :  AND ORDER
       - against -  :
 :  09-CV-2710 (JG)
USA UNITED TRANSIT BUS INC.,  :
SHORELINE PUPIL TRANSPORTATION,  :
THOMAS SCIALPI, LARRAINE LIA  :
CASTELLANO, FRANCIS "FRANK"  :
BRACCIA, CAROL PAPACENA,  :
CLARENCE "JAY" JONES,  :
AMALGAMATED TRANSIT UNION  :
LOCAL 1181, and NICHOLAS MADDALONE,  :
 :
                      Defendants.  :
---------------------------------------------------------------- X

A P P E A R A N C E S:

    JOSE SERRANO
        2215 Bronxwood Avenue, #3E
        Bronx, NY 10469
        Plaintiff, *pro se*

    LUIS BENIQUEZ
        18 Wilson Avenue, #1
        Brooklyn, NY 11207
        Plaintiff, *pro se*

    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
        521 Fifth Avenue, Suite 1700
        New York, NY 10175
    By:   Eric C. Stuart

        -- and --

    ANTHONY J. CINCOTTA, P.C.
        621 Shrewsbury Avenue, Suite 118
        Shrewsbury, NJ 07702

        Attorneys for Defendants USA United Transit, Inc., Shoreline Pupil Transit, Inc.,
           Thomas Scialpi, Larraine Lia Castellano, Francis Braccia, Carol Papacena
           and Clarence Jones

MEYER, SUOZZI, ENGLISH & KLEIN, P.C.
Brooklyn, NY 11201
By: Richard A. Brook
Richard N. Gilberg
Jessica D. Ochs
1350 Broadway, Suite 501
New York, NY 10018
Attorneys for Defendant Amalgamated Transit Union Local 1181

JOHN GLEESON, United States District Judge:

Plaintiffs Jose Serrano and Luis Beniquez allege that their former employer, USA United Transit, Inc. ("United Transit") discharged them without just cause, and that their union, Local 1181-1061 of the Amalgamated Transit Union ("Local 1181") breached its duty to represent them fairly in connection with the termination proceedings. Defendants now move for dismissal of the complaint, arguing, among other things, that plaintiffs filed their complaint outside the six-month statute of limitations. Oral argument on the motions was heard on October 29, 2009. Plaintiffs concede that they brought suit more than six months after their causes of action accrued, but argue that the limitations period should be tolled on equitable grounds. For the reasons set forth below, however, plaintiffs do not present a sufficient basis for tolling the statute of limitations. Defendants' motions to dismiss the complaint are therefore granted.

BACKGROUND

A. *Plaintiffs' Employment at United Transit*

United Transit provides bus transportation for schools in New York City. Jose Serrano and Luis Beniquez were employed by United Transit as bus drivers. Both men were members of Local 1181, and on October 13, 2006, Serrano was elected shop steward by the employees assigned to United Transit's Bronx location. According to plaintiffs, Serrano quickly

2

became unpopular with United Transit's management because he was an aggressive advocate for the rights of union members.

B.   *The December 8, 2006 Incident*

On Friday, December 8, 2006, Serrano finished his shift at approximately 4 p.m. Just as he was about to leave United Transit's Bronx yard, he was approached by fellow employee Angel Laracuente. Laracuente was apparently drinking a beer, and he offered Serrano a drink. According to Serrano, drinking on a Friday afternoon – though contrary to United Transit's rules – was common practice at the yard. It later transpired that Laracuente was secretly acting on behalf of company principals Larraine Lia Castellano and Frank Braccia. Serrano denies drinking the alcohol Laracuente offered him, but admits that he decided to join his fellow employees and smoke a cigar.

A few minutes later, Braccia arrived and accused Serrano of drinking on company property. Braccia was accompanied by another individual who videotaped the incident. Braccia ordered Serrano to submit immediately to an alcohol saliva test. The test, which was conducted in a company trailer by United Transit employee Carol Papacena, purported to show that Serrano had been drinking alcohol. Serrano contends that the positive result was erroneous, that the equipment was past its use-by date, and that the outcome was unreliable because Papacena failed to wait more than fifteen minutes after Serrano had been smoking before taking the swab. The testing process was photographed by another employee, Clarence Jones.

Papacena told Serrano that he was also obliged to submit to a blood test. Serrano called fellow shop steward Vincent Catalano for advice; Catalano told him that the employer was entitled to require him to take the blood test. Serrano, however, refused to submit to any additional testing, and left the trailer.

3

After exiting the trailer, Serrano was approached by Laracuente, who Serrano says was rambling drunkenly about a private meeting that Serrano had with company principals, including Braccia and Thomas Scialpi, about thefts at the Bronx yard. Laracuente allegedly bumped Serrano in the chest three times. Serrano's friend Beniquez then intervened in the fracas on Serrano's side. As Serrano turned away, Laracuente sucker-punched Serrano on the side of his face. Serrano then sought to restrain Laracuente, but Laracuente escaped.[1]

C.  *The Events of December 11, 2006*

On Monday, December 11, 2006, Serrano and Beniquez arrived at work early. Serrano had alerted a TV news crew, and held a press conference outside the yard about the events of the previous Friday. Beniquez, who was sitting nearby at the wheel of a school bus, is alleged to have used the bus to block the entrance to the yard in aid of Serrano's protest, and to have refused repeated orders from Castellano to move the bus. Later that day, Serrano's employment was summarily terminated, and Beniquez was informed that he would face a disciplinary hearing with a view to his termination.

The hearing regarding Serrano's termination occurred on December 13, 2006, and Beniquez's hearing – which also ended in his termination – was held on January 9, 2007. At their hearings, both men were represented by Local 1181 representatives, including defendant Nicholas Maddalone.

D.  *The Arbitration Proceedings*

Serrano and Beniquez each challenged their terminations by invoking the grievance process provided by the collective bargaining agreement between United Transit and

---

[1] At Serrano's urging, assault charges were later filed in Bronx Criminal Court against Laracuente. Laracuente was found not guilty.

4

Local 1181. Both employees were represented at their respective arbitration hearings by Meyer, Suozzi, English & Klein, P.C., the union's law firm.

1. *Serrano's Arbitration Proceedings*

Serrano's hearing took place over six days in March, May, July, October and November 2007. The union argued that Serrano had not consumed any alcohol, that he was unfairly singled out because of his activities as shop steward, and that the employer was barred by waiver and estoppel from enforcing the no-alcohol policy, having condoned Friday-afternoon drinking over a long period of time. The union also contended that Laracuente, not Serrano, was the aggressor in the altercation.

The arbitrator issued his determination as to Serrano on December 30, 2007. The arbitrator stated that "[t]he Union made as vigorous an effort as ever the Arbitrator has seen to poke holes in the Employer's case and to convince the Arbitrator that Serrano was targeted for termination because of his active role as shop steward and because he was disliked by one or more principals of the company." Op. of Arbitrator Elliot D. Schriftman (Stuart Decl. Ex. C), at 17-18. Nevertheless, the arbitrator credited the employer's version of events. He found that (1) Serrano had, in fact, been drinking; (2) Serrano had wrongfully refused to submit to a blood-alcohol test; and (3) Serrano, angry at Laracuente for his role in the "set-up," was responsible for the fight between the two men. The arbitrator agreed with United Transit that each of these offenses justified Serrano's summary dismissal.

2. *Beniquez's Arbitration Proceedings*

Beniquez's hearings took place over three days in April and July 2007. The union contended that Beniquez should be reinstated, arguing that United Transit lacked just cause to discharge him. Again, the union argued that Laracuente was wholly responsible for the

5

confrontation on December 8, 2006. It also contended that the employer had failed to establish that Beniquez blocked the entrance to the yard on December 11, 2006, and that any insubordination on his part was *de minimis*.

Beniquez's challenge was rejected on August 13, 2007. The arbitrator again favored the employer's version of events, and found that Beniquez had attempted to fight Laracuente in retaliation for Laracuente's role as an "undercover agent" for the employer. Though the arbitrator found that the December 8 incident was not enough to warrant Beniquez's dismissal, he agreed that Beniquez's subsequent insubordination on December 11 was a sufficient basis for discharging him from his employment.

E. *Criminal Proceedings Against Maddalone*

On June 3, 2009, Maddalone was indicted in the United States District Court for the Southern District of New York on extortion and unlawful labor payment charges. The indictment alleged that the Genovese organized crime family controlled Local 1181 from the 1980s until at least 2006, that the Local's President from 2002 to 2006, Salvatore "Hotdogs" Battaglia, was a "made" member of the Genovese family,[2] and that Maddalone conspired with Battaglia and with others to extort payments from bus companies employing union members.

Maddalone has since pled guilty to conspiracy to commit extortion, admitting that "in approximately 2004 through 2005" he agreed with others to obtain money from bus companies whose employees were members of Local 1181, using the threat of economic harm to the victims' businesses. Transcript of Proceedings at 2, *United States v. Maddalone*, 09-CR-550 (S.D.N.Y. Sept. 29, 2009).

---

[2] Battaglia was indicted in United States District Court for the Southern District of New York in November 2006 on racketeering, extortion, bribery, unlawful labor payment charges related to his Local 1181 activities. He pled guilty to three of those charges in January 2008.

F.  *The Complaint*

On June 22, 2009, Serrano and Beniquez filed the complaint in this case. In addition to the claims against United Transit and Local 1181, the complaint asserts claims against Castellano, Braccia, Scialpi, Papacena, Jones and Maddalone.[3] Plaintiffs assert that they were wrongfully terminated because of Serrano's union activities. They contend that Local 1181 breached its duty of fair representation by: (1) advising Serrano that United Transit was entitled to require him to submit to alcohol testing; (2) failing adequately to represent Serrano and Beniquez at their internal disciplinary hearings; and (3) failing to advise Beniquez of his right to appeal the arbitrator's award. More generally, plaintiffs contend that their adverse arbitration rulings were the result of "some form of collusion" between management and the union. *See* Letter from Jose Serrano attached to Complaint, at 3.

Defendants now move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

DISCUSSION

A.  *The Standard for Rule 12(b)(6) Motions*

Motions to dismiss pursuant to Rule 12(b)(6) test the legal, not the factual, sufficiency of a complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, the issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims." (internal quotation marks omitted)). Accordingly, I must accept the factual allegations in the complaint as true, *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (per curiam), and "draw all reasonable inferences in favor of the

---

[3] Efforts to serve Maddalone with the complaint have so far proved unsuccessful.

plaintiff." *Bolt Elec., Inc. v. City of New York*, 53 F.3d 465, 469 (2d Cir. 1995). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

In reviewing the complaint, the Court is mindful that, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S at 94 (internal quotation marks omitted). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

When considering a motion to dismiss, a court may examine (1) the factual allegations in the complaint; (2) documents attached to the complaint as exhibits or incorporated in it by reference; (3) matters of which judicial notice may be taken; and (4) documents either in the plaintiff's possession or of which the plaintiff had knowledge and relied on in bringing suit. *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993).

B.  *The Statute of Limitations*

The defendants move to dismiss the complaint as untimely.[4] Though the statute of limitations is an affirmative defense, *see* Fed. R. Civ. P. 8(c)(1), "a complaint can be dismissed for failure to state a claim pursuant to a Rule 12(b)(6) motion raising an affirmative defense if the defense appears on the face of the complaint." *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003) (internal quotation marks omitted). "Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate

---

[4] In addition, the individual United Transit defendants move to dismiss the complaint on the basis that they were not signatories to the collective bargaining agreement, and Local 1181 moves to dismiss the complaint on the basis that the representation it provided plaintiffs did not breach the union's duty of fair representation. Because I find that the complaint is time-barred, I do not reach these possible alternative bases for dismissal.

when a defendant raises ... [a statutory bar] as an affirmative defense and it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000).

Serrano and Beniquez are individual employees alleging that their employer breached the collective bargaining agreement. Where, as here, the agreement provides for arbitration, employees are ordinarily bound by the results of the arbitration proceedings. *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164-65 (1983). But employees who lose in arbitration may still bring suit against an employer, and against the union, where the union breached its duty of fair representation by acting in "such a discriminatory, dishonest, arbitrary, or perfunctory fashion as to breach its duty of fair representation." *Id.* at 164. Plaintiffs contend that United Transit breached the collective bargaining agreement, and to that extent their suit arises under § 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185. They also contend that Local 1181 breached its duty of fair representation. In labor law jargon, plaintiffs assert a "hybrid § 301/fair representation claim." *DelCostello*, 462 U.S. at 165.

A hybrid § 301/fair representation claim is subject to the six-month limitations period for unfair labor practices by established by section 10(b) of the National Labor Relations Act. *DelCostello*, 462 U.S. at 169-72. Where, as here, a plaintiff challenges the adequacy of the union's representation in an arbitration proceeding, the claim accrues when plaintiff has notice of the issuance of the arbitrator's adverse award. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 163 (2d Cir. 1989). The arbitration award upholding Serrano's termination was issued on December 30, 2007 (more than 17 months before the suit was commenced), while Beniquez's award was rendered on August 13, 2007 (more than 22 months before the suit was commenced).

9

Plaintiffs concede that they filed their complaint more than six months beyond the accrual of their causes of action.

C.   *Equitable Tolling*

In opposition to defendants' motions to dismiss, plaintiffs argue that the doctrine of equitable tolling operates in this case to extend the limitation period. Equitable tolling permits a plaintiff to sue after the statute of limitations has expired if through no fault or lack of diligence on his part he was unable to sue before. *See, e.g., Johnson v. Nyack Hosp.*, 86 F.3d 8, 12 (2d Cir. 1996). To determine whether equitable tolling is applicable, a district court must consider "whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time period she seeks to have tolled, and (2) has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003) (internal quotation marks omitted).

Equitable tolling is "only appropriate" where "a party is prevented in some extraordinary way from exercising his rights." *Id.* at 80 (internal quotation marks omitted). *Pro se* plaintiffs, although held to more lenient standards, are not excused from establishing these elements. *See, e.g., Valverde v. Stinson*, 224 F.3d 129 (2d Cir. 2000) (applying general principles of equitable tolling against *pro se* plaintiff); *see also Doe v. Menefee*, 391 F.3d 147, 175 (2d Cir. 2004) (holding that *pro se* status does not in itself constitute an "extraordinary circumstance").

Plaintiffs argue two alternative bases for tolling: (1) equitable tolling based on a delay in discovering that Maddalone was involved in extortion in connection with his activities as a Local 1181 delegate; (2) equitable tolling based on Serrano's medical impairment. As

explained below, I conclude that neither of these arguments warrants equitable tolling, and that the complaint is therefore barred by the statute of limitations.

1. *Equitable Tolling Based on Delay in the Discovery of the Injury or Harm*

Plaintiffs contend that the statute of limitations should be tolled because they were unaware of "the facts regarding the egregious, fraudulent and misleading conduct by the defendants until reading the FBI press releases regarding the arrest and indictment of Nicholas Maddalone on June 3, 2009." Pls.' Opp. at 5. This action was filed on June 22, 2009, shortly after the indictment. As discussed above, Maddalone later pled guilty to extortion conspiracy in connection with his Local 1181 activities.

Conceivably, Maddalone's indictment and guilty plea might assist plaintiffs' claims that Local 1181 breached its duty of fair representation in their particular cases. However, the discovery of additional helpful evidence is not in itself a sufficient basis for extending the time to file suit. Equitable tolling permits a plaintiff to avoid a statute of limitations bar if "despite all due diligence he is unable to obtain vital information *bearing on the existence of his claim.*" *Valdez ex rel. Donely v. United States*, 518 F.3d 173, 182 (2d Cir. 2008) (internal quotation marks omitted) (emphasis added). For plaintiffs to toll the limitations period on this basis, they must establish that they failed to bring a timely claim because they were reasonably unaware of the facts allegedly creating their cause of action during the period before they discovered the additional information.

In this case, it is apparent from the face of the complaint that plaintiffs were fully aware of the facts alleged to give rise to their claims long before the Maddalone indictment became public. Insofar as their complaint pertains to Maddalone, plaintiffs allege that he failed properly to represent them at their disciplinary hearings. If the allegation is true, plaintiffs

11

should have been aware of these facts at the time the claims accrued. Moreover, attached to plaintiffs' complaint is a letter written by plaintiffs' attorney to the Department of Labor on April 14, 2008. That letter shows that, more than a year before they filed their complaint, plaintiffs alleged that their terminations resulted from a retaliatory motive, that United Transit and Local 1181 had colluded to deprive them of their right to a fair arbitration hearing, and that Maddalone had been removed from his position in Local 1181. Accordingly, plaintiffs' subsequent discovery that Maddalone was indicted for union-related activities is not a sufficient basis to excuse their failure to bring suit within six months of the arbitration awards.[5]

2. *Equitable Tolling Based on Mental Illness*

In the alternative, plaintiffs allege that the statute of limitations should be tolled because of Serrano's mental illness. Specifically, Serrano was diagnosed with post-traumatic stress disorder and depression in May 2007, and he claims he was suffering from these illnesses from February 2007 at the latest. Plaintiffs also state that Serrano has been prescribed psychotropic medication to treat his mental condition.

Where failure to comply with the statute of limitations is due to a plaintiff's medical condition, equitable tolling may be appropriate. *See Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000). The mere existence of a mental illness, however, is insufficient to warrant equitable tolling. The party seeking to invoke the doctrine must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting

---

[5] To the extent that fraudulent concealment provides a basis for tolling separate and apart from equitable tolling, *see Pearl v. City of Long Beach*, 296 F.3d 76, 81 (2d Cir. 2002), it is similarly apparent from the face of the complaint that plaintiffs cannot establish that defendants successfully hid any relevant facts beyond April 2008.

with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Hizbullahankhamon v. Walker*, 255 F.3d 65, 75 (2d Cir. 2001) (internal quotation marks omitted).

In light of the wide variety of mental illnesses, the Second Circuit "adheres to a case-specific approach" in determining whether the particular mental illness at issue warrants tolling of the limitations period. *Boos*, 201 F.3d at 185. Even under this case-specific approach, a plaintiff's "conclusory and vague claim, without a particularized description of how [plaintiff's] condition adversely affected [plaintiff's] capacity to function generally or in relationship to the pursuit of [plaintiff's] rights, is manifestly insufficient to justify any further inquiry into tolling." *Id.* (finding, at the summary judgment stage, that plaintiff's statement that she suffered from "paranoia, panic attacks, and depression," was insufficient to justify equitable tolling).

Here, plaintiffs do not sufficiently allege circumstances that would justify equitable tolling based on mental illness. Though plaintiffs assert that Serrano was "medically and legally impaired," that contention is a legal conclusion rather than a factual allegation, and is thus not subject to the principle that the Court must accept the plaintiffs' factual allegations as true at the motion-to-dismiss stage. *See Iqbal*, 129 S.Ct. at 1949. Plaintiffs' assertion that Serrano suffered from post-traumatic stress disorder and depression does not provide a sufficient basis for equitable tolling, because plaintiffs simply do not explain how the illness stood in the way of Serrano's ability to comply with the limitations period. *See Victorial v. Burge*, 477 F. Supp. 2d 652, 655 (S.D.N.Y 2007).

Moreover, facts of which I may take judicial notice directly contradict the claim that Serrano was mentally incapable of bringing a lawsuit against his employer and the union

during the relevant period. Serrano, either through counsel or acting *pro se*, took the following actions during the alleged period of incapacitation: (1) on April 14, 2008, Serrano lodged complaints with the Department of Labor concerning Local 1181's handling of his termination; (3) Serrano filed and pursued a criminal complaint against Angel Laracuente in Bronx Criminal Court on February 2, 2008; (3) Serrano filed a lawsuit in state court against United Transit, Castellano, Braccia, Papacena, Jones and Laracuente on August 8, 2008; (4) after judgment was entered against him in the state-court action for want of prosecution, Serrano sought an Order to Show Cause to restore the case to the calendar, and later appeared in court on the motion. These actions belie plaintiffs' claim that Serrano was prevented by illness from filing a timely complaint in federal court. *See Victorial*, 477 F. Supp. 2d at 655 (declining to toll limitations period where, during the period petitioner sought to have tolled, petitioner defended himself in a trial and filed two appeals); *Lloret v. Lockwood Greene Engineers, Inc.*, No. 97-CIV-5750 (SS), 1998 WL 142326, at *4 (S.D.N.Y. 1998) (finding, at the motion-to-dismiss stage, that plaintiff's depression was insufficient to warrant equitable tolling because plaintiff "was not so affected that he was unable to take care of his legal affairs, as evidenced by his filing of his bankruptcy claim" during the relevant period).

## CONCLUSION

For the reasons stated above, the motions to dismiss the complaint are granted.

So ordered.

John Gleeson, U.S.D.J.

Dated: November 3, 2009
Brooklyn, New York